IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| LCV CAPITAL MANAGEMENT, LLC, | CIVIL DIVISION |
| Plaintiff, | |
| v. | |
| NUOVA ARGO FINANZIARIA S.p.A., F/K/A ARGO FINANZIARIA S.p.A., DELOITTE & TOUCHE S.p.A., and COMPAGNIA ITALIANA ENERGIA S.p.A., | CASE NO.: GD-18- |
| Defendants. | COMPLAINT |
| | JURY TRIAL DEMANDED |
| | FILED ON BEHALF OF: PLAINTIFF |
| | Bruce E. Stanley, Esq. PA ID: 56840 Alicia Schmitt, Esq. PA ID: 200970 STANLEY & SCHMITT PC 2424 Craftmont Avenue Pittsburgh, PA 15205 (412) 401-4654 |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| LCV CAPITAL MANAGEMENT, LLC, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| NUOVA ARGO FINANZIARIA S.p.A., | ) | |
| F/K/A ARGO FINANZIARIA S.p.A., | ) | CASE NO.: GD-18- |
| DELOITTE & TOUCHE S.p.A., and | ) | |
| COMPAGNIA ITALIANA ENERGIA S.p.A.,) | | |
| | ) | |
| Defendants. | ) | |

## NOTICE TO DEFEND

YOU HAVE BEEN SUED in court. IF YOU WISH TO DEFEND against the claims set forth in the following pages, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that IF YOU FAIL to do so, the case may proceed without you and A JUDGMENT may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. YOU MAY LOSE MONEY OR PROPERTY or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE BELOW TO FIND OUT WHERE YOU CAN GET ONE:

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
3rd Floor Koppers Building, 436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 261-5555
www.acbalrs.org

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| LCV CAPITAL MANAGEMENT, LLC, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NUOVA ARGO FINANZIARIA S.p.A., | ) | |
| F/K/A ARGO FINANZIARIA S.p.A., | ) | |
| DELOITTE & TOUCHE S.p.A, | ) | CASE NO.: GD-18- |
| COMPAGNIA ITALIANA ENERGIA S.p.A.,| ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

LCV Capital Management, LLC, by and through its undersigned counsel, files this Complaint against Nuova Argo Finanziaria S.p.A. F/K/A Argo Finanziaria S.p.A., Deloitte & Touche S.p.A., and Compagnia Italiana Energia S.p.A., alleging as follows:

### PARTIES

1. Plaintiff, LCV Capital Management, LLC is a Pennsylvania limited liability company with its principal place of business at 1000 McKnight Park Drive Suite 1006B, Pittsburgh, PA 15237.

2. Upon information and belief, Defendant Nuova Argo Finanziaria, S.p.A., formerly known as Argo Finanziaria, S.p.A., and commonly referred to as "Gruppo Gavio" or "Gavio Group" is a "Società per azioni", or an Italian "company with shares", is the parent company of Defendant Compagnia Italiana Energia S.p.A., and has a principal place of business at Str. Provinciale 211 della Lomellina Località San Guglielmo 3/13 15057, Tortona, Italy.

3. Upon information and belief, Defendant Deloitte & Touche S.p.A. is a "Società per azioni", or an Italian "company with shares", with principal places of business at Galleria San Federico 54, 10121 Tornio TO, Italy and Via Tortona 25, 20144 Milano MI, Italy.

4 Upon information and belief, Defendant Compagnia Italiana Energia S.p.A. is a "Società per azioni", or an Italian "company with shares", with principal places of business at Via Bonzanigo 22, 10144 Torino, Italy.

## VENUE AND JURISDICTION

5. Venue is appropriate in the Court of Common Pleas of Allegheny County, Pennsylvania pursuant to Pennsylvania Rule of Civil Procedure 2179 insofar as the cause of action, and transactions or occurrences out of which the cause of action arose, took place within this County.

6. The Court of Common Pleas of Allegheny County, Pennsylvania has jurisdiction over the Defendants pursuant to 42 Pa. Code §5322 insofar as Defendants have transacted business within this Commonwealth and have caused harm and tortious injury within this Commonwealth that form the basis for the present action.

## BACKGROUND FACTS

### Pre-Transaction Events

7. During the period between July and October 2016, certain individual investors and the principals of the Plaintiff LCV Capital Management, LLC formed a U.S. company, Energrid Holdings Inc. ("EH"), for the purpose of entering into negotiations with Nuova Argo Finanziaria, S.p.A., formerly known as Argo Finanziaria,

S.p.A.,–the main holding company of the Italian infrastructure conglomerate commonly referred to as "Gruppo Gavio" or "Gavio Group" (hereinafter "Argo")—to purchase their energy utility (electricity and natural gas retail) business comprised of three companies– Energrid S.p.A. ("EG"), Energia et Territorio S.p.A. ("EET"), and Societa Italiana Gas Srl ("SIG") in November 2016 from the intermediate holding company Compagnia Italiana Energia S.p.A. ("CIE"), entirely controlled by the same Argo Finanziaria. The management of Argo was the same management of CIE and practically coincided with the directors of EG, EET and SIG.

8. As part of the due diligence process associated with the transaction, EH requested that Argo and CIE provide certified audited financial statements for EG, EET, and SIG for the 6-month period ended June 2016.

9. Those financial statements, including the balance sheet assets and liabilities, were audited, certified, and presented to LCV and EH by Argo and CIE directors and officers, together with their long-term auditors, Deloitte & Touche ("Deloitte"). The Chief Financial Officer ("CFO") of Argo, Stefano Viviano, was the CFO throughout the entire chain of ownership of the target companies EG, EET and SIG.

10. Deloitte prepared the audit and certified the financial statements, including the balance sheet assets and liabilities, and these certified documents were provided to LCV and became the determining factor for LCV's and EH's decision go forward and complete the transaction on terms very favorable to Argo and CIE.

11. The transaction closed at the end of November 2016 and the total price paid by EH was approximately €18 million, comprised of €10.5 million cash paid to Argo by EH, approximately €6 million in repayment of a shareholder loan by EG to Argo at

closing, and €1.5 million for various transaction expenses. The purchase price was financed through EH equity and debt from Key Bank in the U.S. and through existing EG funds (for the shareholder debt repayment).

12. At the times relevant herein, Plaintiff was located within Allegheny County, Pennsylvania, and Defendants' actions and communications were knowingly and intentionally directed at Plaintiff LCV and its associated companies and representatives located within this jurisdiction.

### Post-Transaction Events

13. In the period between March and May 2017, while preparing internally the materials for the 2016 audit, EH discovered material representations and fraudulent activity related to the certified financial statements Deloitte had issued. Among many, the following major items were identified:

   a. First, uncollectable (and dated) trade accounts receivable ("A/R") in EG in the amount of approximately €18 million dating for up to five years prior to the transaction were certified as current and collectable by Deloitte and represented as such by Argo and CIE despite the existence of internal written correspondence stating that these A/R should have been written off long ago.

   b. Neither Argo, CIE, Deloitte, *nor any of the individuals representing them* ever disclosed or otherwise warned about the impaired nature of this A/R in any of their audits of EG for the previous five years, including the June 2016 audit.

c. This A/R represented almost 200% of EG's net working capital and was approximately two to three times the size of EG's net equity, and essentially meant that EG was insolvent at the inception of the transaction.

d. Second, Deloitte certified goodwill value of approximately €27 million related to a supply contract from an energy distributor in the form of a rebate scaling commission that was based on certain favorable pricing conditions better than market terms for EG, but which, unbeknownst to Plaintiff, had already expired three years prior to the transaction.

e. In addition as Plaintiff has learned subsequently, that "goodwill" representation was further based on clients and volume scale projections that were missed cumulatively by as much as 1000% by the time of Closing

f. However, neither Deloitte nor CIE ever impaired or wrote down this "goodwill", but instead by way of fraud by omission, represented it as still being valid for the improper purpose of artificially inflating the net equity of EG.

g. The ultimate write-off of this phantom goodwill—done only after LCV had completed the purchase and discovered the fraud perpetrated against it—not only wiped out any equity in EG, but also took the company's book value into deep negative territory, resulting in EG becoming unable to continue business on an ordinary basis, and rendering it substantially insolvent.

    h. Third, these same accounting "practices" also served as the basis for Argo and CIE claiming a historically robust business for EG in order to maintain an investment grade credit rating—a rating essential for EG to function in its day-to-day operations, and the absence of which would have cause the business to collapse even before Closing. It is not without significance, then that, despite its true "book value", before Closing, the Company was not (and never had been) valued as having negative equity.

    i. Deloitte was quite aware of this and enabled EG's false credit rating to be touted as proof of EG's stability prior to the transaction.

    j. Upon information and belief, Deloitte also actively sought out and supported Argo in the transaction for the sole purpose of inducing LCV to proceed with the Closing.

14. LCV has raised these issues with all of the Defendants as well as their individual directors and officers, but to date their response has been to deny knowledge of the foregoing and to blame previous and current management for the tissue of lies perpetrated upon LCV.

15. In order to protect the interests of LCV and EH, between June and September 2017, EH had no choice but to refuse to approve the 2016 EG financial statement as it was clearly prepared using false information. Deloitte was requested to provide an explanation for the false information found in the 2016 financial statement but it has refused to do so, and instead has blamed Argo and CIE for the discrepancies between the audited financials and reality.

16.     In an effort to save EG, between July and September 2017, LCV, through EH, continued to pour money into EG to make up for the net working capital shortfall caused by the non-existent A/R. Despite that effort, given Deloitte's acrimonious refusal to explain its conduct which rendered it impossible to issue an accurate financial statement, EH lost its own credit rating, and its banks froze its credit lines.

17.     As a result, EH was forced to sell EG and EET for one euro in November 2017 to a third-party energy company in Italy. EH realized a loss of more than US $15 million, which loss was absorbed directly by Plaintiff LCV.

18.     At the times relevant herein, Plaintiff was located within Allegheny County, Pennsylvania, and Defendants' actions and communications were knowingly and intentionally directed at Plaintiff LCV and its associated companies and representatives located within this jurisdiction. Additionally, the harm and tortious injury alleged herein was suffered by Plaintiff within this jurisdiction.

## COUNT I—FRAUD

19.     Paragraphs 1 through 18 are incorporated by reference as if set forth fully herein.

20.     Under Pennsylvania law, to state a claim for fraud, Plaintiff must allege: 1) a representation by or on Defendant's behalf, 2) which is material to the transaction at hand, 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) Plaintiff's justifiable reliance upon the representation; and 6) that the resulting injury was proximately caused by the fraudulent representation.

21. Here, as detailed above, each of the Defendants affirmatively misrepresented to Plaintiff the true value of EG in order to induce Plaintiff to purchase EG.

22. Those affirmative representations were material inasmuch as they served to induce Plaintiff to invest approximately €18 million into the transaction.

23. Defendants made the affirmative misrepresentations to Plaintiff with full knowledge of their falsity of at the time of making them.

24. Defendants made the affirmative misrepresentations with the intent of misleading LCV into relying on them.

25. LCV justifiably relied upon the affirmative misrepresentations inasmuch as they were made in the guise of audited financial statements, requested in the course of due diligence with the clear and express purpose of determining the true value of EG in the context of the purchase transaction.

26. LCV has suffered severe economic harm as a direct result of its justifiable reliance upon Defendants' affirmative misrepresentations.

## COUNT II—CIVIL CONSPIRACY

27. Paragraphs 1 through 26 are incorporated by reference as if set forth fully herein.

28. To state a valid claim for civil conspiracy in Pennsylvania, a party must show two or more persons combined or agreed with intent to do an unlawful act or do any otherwise lawful act by unlawful means.

29. In the present case, as outlined above, intending malice to the Plaintiff, each and every one of the Defendants overtly agreed to unlawfully and affirmatively

misrepresent to the Plaintiff the true financial condition of EG, which act resulted in actual legal damage to the Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court award it the following relief:

a) Compensatory damages in the form of direct economic harm in an amount in excess of $35,000.00;

b) Prejudgment interest;

c) Punitive damages;

d) A Trial by Jury on all Counts; and

e) Any and all other relief to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

Dated: 10/23/18

Respectfully submitted,

Bruce E. Stanley, Esq.
PA ID: 56840
bruce@stanleyschmittlaw.com
Alicia Schmitt, Esq.
PA ID: 200970
alicia@stanleyschmittlaw.com
STANLEY & SCHMITT PC
2424 Craftmont Avenue
Pittsburgh, PA 15205
(412) 401-4654 (Phone)
(412) 265-6015 (Fax)

*Counsel for Plaintiff*
*LCV Capital Management, LLC*

## VERIFICATION

I, Anthony J. Bonidy, an officer of the Plaintiff, LCV Capital Management, LLC, and authorized to make this verification on its behalf, hereby depose and state that while I do not have personal knowledge of all of the facts recited in the foregoing Complaint, those of which I do not have personal knowledge were collected and made available to me by others, and the information contained in the Complaint is true and correct to the best of my knowledge and belief based upon my personal knowledge or based upon information made available to me, and, therefore, the same is hereby verified by me subject to the penalties of 18 Pa. C.S. section 4904 regarding unsworn falsification to authorities.

October 19th, 2018

_____
Anthony J. Bonidy