**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LCV CAPITAL MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:18-cv-01645 |
| v. | ) | |
| | ) | |
| NUOVA ARGO FINANZIARIA S.P.A. | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Before the Court are Plaintiff's Motion to Amend its First Amended Complaint ("FAC") (ECF No. 121) and two Motions to Dismiss filed by Defendants seeking to dismiss Plaintiff's FAC on various grounds. (ECF Nos. 92 and 94.) Because the FAC does not make allegations sufficient for this Court to exercise personal jurisdiction over Defendants, and they are not made sufficient by Plaintiff's proposed amendments to the FAC, leave to amend will be denied, and this action dismissed without prejudice for want of personal jurisdiction.

The Court held Oral Argument on those Motions to Dismiss. A central but not exclusive argument advanced for dismissal was that the Court lacked personal jurisdiction over Defendants. At that hearing, counsel for Plaintiff orally requested leave to file a Second Amended Complaint ("SAC"), representing to the Court that it could add information to the FAC which Plaintiff said would obviate the personal jurisdiction arguments advanced in the Motions to Dismiss. The Court granted leave for Plaintiff to seek leave to amend, directing that Plaintiff attach to the Motion for Leave to Amend a "redlined" copy of the proposed SAC. That occurred, and Defendants were granted leave to file any

1

opposition to such Motion for Leave to Amend. That happened also. These matters are ripe for disposition.

For the following reasons, the Court **DENIES** Plaintiff's Motion to Amend because this Court concludes that even if it were to consider the material the Plaintiff proposes to add to yet another amended complaint, the Court would lack specific personal jurisdiction, and therefore, further amendment would be futile. Because the Court lacks specific personal jurisdiction over all Defendants, the Court also may not exercise jurisdiction as to Plaintiff's Racketeer Influenced and Corrupt Organizations ("RICO") Act claims. The Court **GRANTS** both Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's FAC in that the Court lacks personal jurisdiction over Defendants, and further amendment would be futile. Because the Court concludes that grounds do not exist for the Court to exercise jurisdiction over Defendants, the Court does not consider Defendants' remaining grounds for dismissal: compelled arbitration or dismissal based on *forum non conveniens*.

This Opinion is organized as follows: First, the Court addresses the jurisdictional contacts with this forum as alleged in Plaintiff's FAC and explains why the FAC's allegations are insufficient for this Court to conclude that it has personal jurisdiction over Defendants. Second, as the proposed SAC carries over and relies on the FAC's allegations, the Court addresses the new allegations raised for the first time in the proposed SAC and explains why the new jurisdictional allegations still do not clear the personal jurisdiction bar. This leads to a denial of leave to amend on futility grounds, and dismissal of this action without prejudice for want of personal jurisdiction.

## I.    BACKGROUND

Plaintiff is LCV Capital Management LLC ("Plaintiff" or "LCV"), a limited liability company owned primarily by Mr. Lodovico de Visconti and Mr. Anthony Bonidy (both

individuals), with its principal place of business in Pittsburgh, Pennsylvania. (ECF No. 80, at 5.) Defendants are (1) Nuova Argo Finanziaria S.p.A. ("Nuova Argo") F/K/A Argo Finanziaria S.p.A.; (2) Compagnia Italiana Energia in Liquidation S.r.L. ("CIE") F/K/A Compagnia Italiana Energia S.p.A. (collectively, "the Gavio Defendants"); and (3) Deloitte & Touche S.p.A ("Deloitte Italy"). (*Id.*) Nuova Argo's principal place of business is Tortona (AL), Italy, and the FAC further alleges Nuova Argo to be the parent company of CIE.[1] CIE's principal place of business is Torino, Italy. (*Id.* at 5, 6.) Finally, Deloitte Italy's principal place of business is Milano MI, Italy. (*Id.* at 6.)

In sum, LCV alleges Defendants collectively defrauded it of millions of dollars by enticing LCV to invest in companies that were insolvent (or very close to insolvent). Based on the facts as alleged in Plaintiff's FAC, the Court understands Plaintiff's claims to center on the following events: First, LCV's allegations of fraud by Defendants in obtaining LCV's investment in three Italian utility companies. Second, LCV's allegations that settlement negotiations to resolve the fraud allegations were themselves part of the fraudulent scheme. The Court summarizes the factual background below as drawn from the allegations of LCV's FAC.[2]

The relationship between LCV and Defendants began in 2016 when an individual named Mr. Luca Calvetti, allegedly acting as an agent of both LCV and the Gavio Defendants, solicited LCV and informed it of the opportunity to purchase from the Gavio Defendants three Italian retail

---

[1] Defendants assert that CIE has never been owned by Nuova Argo because "[Nuova Argo] is not 'formerly known as Argo Finanziaria S.p.A,' nor are the entities identical . . . [as it] was newly created in 2018 as part of a 'spin-off' transaction." (ECF No. 95, at 25.) While the Court must take the facts alleged in a light most favorable to LCV, the nuanced distinctions that Defendants highlight do not resolve the Court's analysis of personal jurisdiction over Defendants as the Court will explain in detail below.

[2] Aside from added detail about Defendants' contacts with Pennsylvania; more detail about the substantive contents of allegedly fraudulent communications; and specification about LCV's alleged reliance on Deloitte Italy's 2016 unaudited Interim Financial Statement as well as the 2014 and 2015 audited Financial Statements (ECF No. 121-1, at 18), Plaintiff's allegations of the alleged nefarious conduct are no different in the proposed SAC. When any of the proposed new content impacts the personal jurisdiction analysis, it is addressed in context later in this Opinion.

utilities—Energrid S.p.A., Energia e Territorio S.p.A., and Società Italiana Gas Srl (collectively, "the Target Companies"). (*Id*. at 6.) First, a Luxembourgian investment vehicle called HII S.à r.l ("HII") controlled by LCV sought to acquire the Target Companies. (*Id*. at 12–13.) Before closing, HII was replaced as the purchaser by its subsidiary Energrid Holdings, Inc. ("EH"), a Delaware holding company wholly owned by HII and incorporated for the purpose of holding the Target Companies. (*Id*. at 13.) Deloitte Italy came into the picture when the Gavio Defendants hired the company purportedly to provide "independent, third-party audited financial statements for the Target Companies." (*Id*. at 6.)

In November 2016, CIE entered into a Shares Purchase Agreement ("SPA") to sell the Target Companies to EH for roughly €18 million. (*Id*. at 13.) After the purchase, LCV learned that the Target Companies were effectively insolvent. (*Id*. at 14–16.) As a result, LCV continued to "pour money in the Target Companies in an effort to salvage them." (*Id.* at 2.) In the end, LCV sold two of the three utility companies for €1, leading to a loss of about $15 million. (*Id*. at 18.) Now, LCV claims that Defendants collectively and intentionally falsified financial documents, which induced LCV to purchase the Target Companies. (*Id*. at 1–3, 13–16.) LCV alleges that Deloitte Italy prepared an audit and certified financial statements, including balance sheets and liabilities, for the Target Companies that stemmed from material and fraudulent misrepresentations. (*Id*. at 14.) LCV says it relied on Deloitte Italy's work when making its investment decision. (*Id*. at 14–16.)

Around March 2018, the Gavio Defendants contacted LCV about a potential settlement of LCV's allegations of fraud. (*Id*. at 18.) LCV agreed to engage in settlement discussions "so long as the deal could be accomplished within a month." (*Id*. at 19.) According to LCV, however, the Gavio Defendants purposefully stalled negotiations, which led to further losses by LCV (because

of changes in the exchange rate and incurring more legal expenses). (*Id.*) In October 2018, LCV commenced this action in Pennsylvania state court, which Defendants timely removed. (*Id.* at 20.) In December 2018, the parties agreed to a stay of litigation pending further settlement talks. (*Id.*)

During the stay, the parties eventually convened in New York City for in-person settlement discussions. (*Id.* at 21.) At that meeting, LCV contends that the parties reached a negotiated preliminary agreement with only "two outstanding terms [to be resolved]—the settlement amount, and an issue in the terms and conditions referencing Italian law[.]" (*Id.* at 22.) In February 2019, those terms were allegedly resolved. (*Id.* at 22–23.) LCV claims that the parties' understanding was that some "boiler plate" language would be added to the preliminary agreement shortly after the in-person talks. (*Id.* at 23.) LCV agreed to a consent motion extending all Defendants' time to respond to the Complaint—representing to the Court that the parties had reached a deal in principle and needed time to finalize it. (*Id.* at 24.) In the weeks that followed, Defendants added new release language to the proposed agreement. (*Id.* at 25.) This change led LCV to believe Defendants "never intended to finalize and perform the agreed settlement in good faith." (*Id.* at 3–4.) As a result, LCV moved to enforce settlement in this Court, which Motion it later withdrew. (ECF No. 78.)

On January 30, 2020, LCV filed its FAC. (ECF No. 80.) In its FAC, LCV alleges that Defendants, by their actions, violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, § 18 U.S.C. 1964. (*Id.* at 32, 35.) LCV also raises claims of fraud, civil conspiracy, breach of contract, breach of the duty to negotiate in good faith, misrepresentation, and unjust enrichment. (*Id.* at 39–48.) In response, the Gavio Defendants and Deloitte Italy both seek dismissal of the FAC. The Gavio Defendants bring their Motion under Federal Rule of Civil Procedure 12(b)(2), (3), or (6), and in the alternative, they seek to compel Plaintiff to submit its claims to arbitration pursuant to

9 U.S.C. § 206. Deloitte Italy's Motion seeks dismissal under 12(b)(2), 12(b)(6), or because of the doctrine of *forum non conveniens*. (ECF No. 92.)

The Court held Oral Argument on the respective Motions to Dismiss. During Oral Argument, LCV orally requested leave to amend its FAC and thereafter filed a motion to that effect. (ECF No 121.) Defendants opposed Plaintiff's request because if the proffered SAC were permitted, it still would not clear the personal jurisdiction bar, thus making further leave to amend futile. Plaintiff's Motion to Amend and Defendants' respective Motions to Dismiss LCV's FAC are ripe for disposition.

## II.   Legal Standards

### A.   Motion for Leave to Amend Under Fed. R. Civ. P. 15(a)(2)

Federal Rule of Civil Procedure 15(a)(2), "which [ ] conditions amendment [of a pleading] on the court's leave or the opposing party's written consent," governs when a party may amend outside the "a matter of course" context described in (a)(1). *Mullin v. Balicki*, 875 F.3d 140, 149–50 (3d Cir. 2017). Rule 15(a)(2) provides that courts "freely give leave [to amend] when justice so requires." But courts bear great discretion in assessing whether to deny leave to amend. *See id.* (discussing the factors that a court may consider on a motion to amend as explained in *Foman v. Davis*, 371 U.S. 178 (1962)). "Denial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Id.* (citing *Foman*, 371 U.S. at 178). Amendment of a complaint is futile when it "will not cure the deficiency in the original [pleading] or if the amended [pleading] cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988) (citations omitted).

## B. **Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a complaint for lack of personal jurisdiction. Once a challenge to personal jurisdiction has been raised, the plaintiff has the burden of establishing "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted). The plaintiff carries the burden of proving "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc.,* 983 F.2d 551, 554 (3d Cir. 1993) (citations omitted). When the district court does not hold an evidentiary hearing as to personal jurisdiction, the plaintiff must "establish a *prima facie* case of personal jurisdiction," and the Court must accept as true all allegations in the complaint. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2007); *Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 142 n.1 (3d Cir.1992) ("[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."). Plaintiff does not advance a "general personal jurisdiction" argument, but one based on what it says turns on the existence of "specific personal jurisdiction."

## III.  **DISCUSSION**

The Court holds that amendment of LCV's FAC would be futile because LCV's proposed SAC (1) "will not cure the deficiency in the original [pleading]" as to the lack of personal jurisdiction, and (2) the SAC's amended allegations could not "withstand a renewed motion to dismiss" on the same grounds. *Jablonski*, 863 F.2d at 292 (citations omitted). As a result, the Court will deny LCV's Motion for Leave to Amend. As a preview of what is to come, the Court provides

this roadmap of the Opinion: As the lead up to its decision to deny LCV's Motion to Amend, the Court first addresses why LCV's FAC, "the original pleading," is deficient. Then, the Court addresses the jurisdictional arguments advanced by the parties' motion to dismiss briefing and finally whether the proposed amendatory material clears the personal jurisdiction threshold. Thus, the Court first assesses the allegations of LCV's FAC and the alleged jurisdictional contacts it asserts before turning its attention to the added jurisdictional allegations as proposed in LCV's SAC. After explaining why the FAC does not establish that this Court has personal jurisdiction over any Defendant, the Court will next address why the amended allegations as proposed in LCV's SAC could not withstand a renewed motion to dismiss for want of personal jurisdiction. The Court further organizes its assessment of personal jurisdiction in the context outlined above first as to the Gavio Defendants and then as to Deloitte Italy.

### A.  Specific Personal Jurisdiction

Federal courts may "exercise personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Looking to Pennsylvania's long-arm statute, a federal court sitting in Pennsylvania may exercise jurisdiction "based on minimum contacts with th[e] Commonwealth allowed under the Constitution of the United States." *Id.* (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)) (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). "A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional." *Pennzoil Prods. Co. v. Colelli & Assocs.*, *Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citing *Farino*, 960 F.2d at 1221 and *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir. 1994)). Two types of personal jurisdiction exist: general jurisdiction and specific jurisdiction. *O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15

& n.9 (1984)). At Oral Argument, LCV did not dispute the Court's understanding that the only type of jurisdiction LCV asserts as applicable to Defendants here is specific jurisdiction. It advances no contrary position relative to its proposed amendment.

To determine whether specific jurisdiction exists, courts apply a three-part inquiry: first, whether the defendant has "purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); second, whether the present litigation arises out of or relates to at least one of those activities. *Id*. (citing *Hall*, 466 U.S. at 414–15 & n.9); and third, assuming the first two requirements are satisfied, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id*. (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 476).

Centrally at issue is the first prong: whether the Gavio Defendants and Deloitte Italy purposefully directed their activities at the forum, such that they purposefully availed themselves of the privilege of conducting activities within the forum, here, Pennsylvania. *Id.* This prong is otherwise known as the minimum contacts analysis, and the Court determines that the Supreme Court's guidance in *Walden v. Fiore* is controlling of its analysis here. To "exercise [specific] jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A court's ability to exercise specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)," which narrows a court's focus under this first prong to the relationship among the forum state, the defendant, and the case at issue. *See Walden*, 571 U.S. at

283 n.6 (alteration in original) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).

As a result, the Court's core inquiry here is whether the Gavio Defendants and Deloitte Italy have sufficient minimum contacts with Pennsylvania, so that Defendants' "suit-related conduct" creates "a substantial connection" with the Pennsylvania. *Id.* at 284. The minimum contacts inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). Importantly, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478). Finally, the "defendant's relationship with a plaintiff [or a third party] . . . is an insufficient basis for jurisdiction[.]" *Id*. at 286. (citing *Rush v. Savchuck*, 444 U.S. 320, 332 (1980)).

## B.  LCV's FAC: The "Original Pleading's" Deficiency

### 1.  The FAC's Alleged Contacts Connecting Defendants to Pennsylvania

In its FAC, LCV alleges that from 2016 through 2019, "Defendants' actions and communications were knowingly and intentionally directed at Plaintiff LCV and its agents and representatives located within [Allegheny County, Pennsylvania]." (ECF No. 80.) To support its assertion that Defendants are substantially connected to Pennsylvania, LCV mainly relies on the fact that at all times relevant, (1) it was located in Allegheny County, Pennsylvania when it received or engaged in (2) extensive email correspondence and five alleged phone calls (a)

prompting and surrounding the Target Companies transaction; (b) following the close of the transaction; and (c) continuing through the course of the parties' settlement negotiations.[3]

The Court summarizes the contacts that Defendants allegedly had with Pennsylvania (and as more specifically alleged by LCV, the Pittsburgh area) as beginning in mid-2016 when "Mr. Calvetti first initiated contact [with LCV] . . . through Studio Cisnetto, an Italian business consulting company working for LCV . . . [to inform] LCV of the 'opportunity' to purchase the Target Companies." (*Id*. at 7.) Because LCV alleges Mr. Calvetti was conspiring with Defendants preceding and throughout the Target Companies deal (*id*. at 8), the Court interprets this alleged contact with Pennsylvania as attributable to both the Gavio Defendants and Deloitte Italy. Next, LCV points to email correspondence that took place from July 2016 through October 2016, which the Court also interprets as asserting contacts on behalf of both the Gavio Defendants and Deloitte Italy. (*Id*. at 9–12.) As alleged by LCV, the email correspondence during this time frame was mainly initiated by Mr. Calvetti through Studio Cisnetto, "an Italian business consulting company working for LCV." (*Id*. at 7.) Though the FAC does not specifically allege where Mr. Calvetti was located when engaging in these communications, the Complaint can be fairly read to allege he was in Italy, and there is no basis to conclude that he was in Pennsylvania. (*Id*. at 7, 8.) Otherwise, all LCV offers as to location here is that "[a]t the times of the occurrences . . . Plaintiff was located within Allegheny County, Pennsylvania[.]" (*Id*. at 14.) The substance of the correspondence predominantly covered due diligence matters and the formation of allegedly binding offer terms surrounding the Target Companies transaction.

---

[3] Along with its pleadings, LCV offers into the record several declarations and exhibits (ECF Nos. 103-1–103-5 and 104-1–104-6) that the Court may consider on a 12(b)(2) jurisdictional attack. *See Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir.1990).

The 2016 email correspondence references two alleged phone calls: (1) in emails dated August 2, 2016, Mr. Calvetti solicited a phone call with LCV to discuss "drafts of the term sheet with 'mark-up' comments from Mr. Viviano[, who at the time held the position of Chief Financial Officer of Nuova Argo and was a board member of one of the Target Companies,] and the Gavio Defendants" (*Id*. at 10); and (2) in an email dated September 30, 2016 from LCV to Mr. Alberto Rubegni, the Chief Executive Officer of Nuovo Argo, LCV references a "phone call Mr. de Visconti had received from Mr. Rubegni the day before to 'resolve the main points [in the Binding Offer], as to principal to principal, in a prudent manner.'" (*Id*. at 12.) Fairly read, the first referenced phone call is attributable to both Defendants, based again on LCV's allegation that Mr. Calvetti was conspiring with Defendants. As for the second referenced phone call, the contact is attributable only to the Gavio Defendants because neither Mr. Calvetti nor Deloitte Italy are referenced, and Mr. Rubegni is only connected to the case here vis-à-vis the Gavio Defendants.

Along with the 2016 email correspondence and phone calls noted above, the Court summarizes the contacts—as alleged in LCV's FAC, and which the Court notes remain unchanged by LCV's SAC—that allegedly connect the Gavio Defendants to Pennsylvania as follows[4]:

1. "Contemporaneous with the execution of the [Share Purchase Agreement]," LCV executed and sent to the "board of directors of CIE . . . a letter that clearly indicated LCV's place of business as Pittsburgh, Pennsylvania." (*Id*. at 13; *see also* Visconti Dec. ¶ 18.)

2. In December 2018, "the Gavio Defendants e-mailed to LCV's counsel a set of proposed Main Terms and Conditions that had been drafted following earlier discussions[.]" (ECF No. 80, at 20.)

---

[4] The emails and other communications LCV asserts connect the Gavio Defendants to Pennsylvania are advanced in Mr. de Visconti's Declaration ("Visconti Dec.") at ¶¶ 12, 13, 14, 15, 17, 18, 19, 33, and 35 and Mr. Bonidy's Declaration ("Bonidy Dec.") at ¶¶ 6–8. (ECF Nos. 103-1, 103-2, 104-1, and 104-2.)

3.   In January 2019, counsel for the Gavio Defendants responded to an email from LCV on behalf of the Gavio Defendants, reflecting that they "would continue to seek good-faith negotiations," and attaching "another draft version of the Main Terms and Conditions." (*Id*. at 21)

4.   Counsel for the Gavio Defendants reached out by telephone and an email in January 2019 to conduct a settlement meeting in New York, which ultimately took place on January 24, 2019. Although no representative from Deloitte Italy was present, the Gavio Defendants communicated that "[they] . . . had reached an agreement on the percentage split of the settlement payment . . . . and that the meeting could proceed with Deloitte's interests accounted for on that basis." (*Id*.)

5.   Following the meeting, there were a few open terms remaining, and the parties engaged in a series of email communications between January 29 and February 5, 2019 "regarding the remaining open terms," and "by emails dated February 5, 2019, [a] . . . final agreement on the Main Terms and Conditions was reached." (*Id*. at 22–23.)

6.   In mid-February 2019, counsel for the Gavio Defendants "circulated a draft of the formal Settlement Agreement" to all parties, and emails "were exchanged between counsel for all parties regarding" new demands made in the Settlement Agreement that were not reflected in the initial Main Terms and Conditions. (*Id*. at 25.)

7.   On or around November 2019, a "tax dispute management agreement [was] . . . drafted and propounded by counsel for Argo and CIE, and addressed to both Mr. Bonidy in Pittsburgh and Mr. de Visconti at his LCV e-mail address[.]" (*Id*. at 28.)

8.   Finally, counsel for the Gavio Defendants followed up with two emails in November 2019, one "urg[ing] that the [tax dispute] agreement should" be immediately returned and

executed, and another in which the Gavio Defendants rejected LCV's redline edits of that tax dispute agreement. (*Id.* at 28–29.)

LCV contends that the following are contacts that meaningfully connect Deloitte Italy to Pennsylvania:

1.  Mr. Calvetti's initial solicitation of LCV in mid-2016, as an alleged conspirator of Defendants' fraudulent statements and misrepresentations, as noted above (*see* Visconti Dec. ¶¶ 8, 9);

2.  The 2016 email correspondence, as summarized above, which included information from Deloitte's financial audits and financial statements of the Target Companies (*id.* at ¶¶ 21, 22);

3.  A 2016 phone call initiated by Mr. Calvetti to LCV to discuss the transaction's term sheet, as noted above (ECF No. 80, at 10);

4.  A July 2017 phone call from Deloitte Italy to KeyBank requesting information "deemed necessary to complete the 2016 Audit of Energrid S.p.A," one of the Target Companies (Bonidy Dec. ¶ 7);

5.  February 2019 emails that "were exchanged between counsel for all parties regarding" new demands made in the draft Settlement Agreement that were not reflected in the initial Main Terms and Conditions. (ECF No. 80, at 25.)

A final contact that the Court identifies as alleged by LCV in its FAC—one that remains unchanged in the SAC—stems from a letter dated July 25, 2017, which was delivered on Energrid letterhead (one of the Target Companies) to "EH's creditor, KeyBank Commercial Banking in Pittsburgh, Pennsylvania, requesting that EH's detailed financial information be sent directly to Deloitte . . . [and] purportedly in connection with an audit by Deloitte of Energrid. The letter was

purportedly, although not actually, sent by Mr. de Visconti, and Mr. de Visconti's signature had been forged on the bottom of the letter." (*Id.* at 17–18.) Based only on the allegation as presented in the FAC, it is unclear to which party LCV attributes this contact, but in considering the declarations LCV has submitted in support of personal jurisdiction, the FAC appears to be contending that this allegedly forged letter contact is attributable to Deloitte Italy. (Visconti Dec. ¶¶ 34, 35; Bonidy Dec. ¶ 7.)

The Court frames the issue now before it as follows: whether the listed phone calls and email correspondence between and among Defendants and LCV about the Target Companies transaction and later settlement negotiations, all while LCV maintained its principal place of business in Pittsburgh, create minimum contacts with Pennsylvania sufficient to conclude that Defendants created a substantial connection with the forum state, Pennsylvania, such that it can be said Defendants purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted) (quoting *Hanson v. Denckla*, *357* U.S. 235, 253 (1958)). Because LCV raises some intentional tort claims against Defendants and a minimum contacts analysis in that context is supplemented by the *Calder* "effects" test, the Court analyzes the claims raised in LCV's FAC as follows: (1) first in the context of LCV's intentional tort claims (Counts III and Count IV); (2) second, as to LCV's remaining non-RICO claims (Counts V, VI, and VII); and (3) finally, as to LCV's claims brought under RICO §§ 1962(c) and 1962(d) (Counts I and II).

## 2.  **The Parties' Arguments**

While the Court assesses LCV's FAC for resolving LCV's Motion to Amend its FAC, the Court concludes that it is appropriate to consider the pending Motions to Dismiss LCV's FAC along with its analysis of the FAC's jurisdictional sufficiency. In its Memorandum of Law in

Support of its Motion to Dismiss, Defendant Deloitte Italy argues at the outset that this suit should have never been brought "in Pennsylvania." (ECF No. 93, at 10.) It also asserts that LCV's claims brought against Deloitte Italy "relating to agreed non-audit procedures [it] performed in Italy" do not present "facts sufficient to support the exercise of jurisdiction over Deloitte Italy," which is an Italian company. (*Id.* at 11.) Deloitte Italy contends that not only was Deloitte Italy "not a party to the [t]ransaction on which LCV grounds its claims," but also that Deloitte Italy has no connection to Pennsylvania and its limited communications with LCV do not create sufficient contacts. (*Id.* at 15.) Finally, as to any intentional tort claims against it, Deloitte Italy argues that LCV has not satisfied the "effects tests" as set out in *Calder* "to establish specific jurisdiction over a nonresident defendant[.]"[5] (*Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984).)

Along the same lines, the Gavio Defendants contend that they have insufficient minimum contacts with Pennsylvania for this Court to exercise personal jurisdiction over them, arguing specifically that "a non-resident's contracting with a forum resident" serves as insufficient grounds to "establish requisite minimum contacts." (ECF No. 95, at 17 (quoting *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 261 (3d Cir. 2000)).) They also argue that the agreement to purchase the Target Companies, and peripheral contracts or documents surrounding the deal, were executed in Italy, closed in Italy, and elected to apply Italian law. (*Id.*; ECF No. 98-1; Viviano Dec. ¶ 15) Ultimately, they contend that the alleged fact that LCV "suffered an injury in

---

[5] As support for its jurisdictional attack, Defendant Deloitte Italy offers into the record for the Court's consideration declarations and exhibits. (ECF Nos. 92-1–92-7.) To support its argument that there are insufficient contacts tying Deloitte Italy to Pennsylvania, Deloitte Italy refers to Mr. Santa Rizzo's Declaration, in his capacity as a partner at Deloitte & Touche S.p.A. (Rizzo Dec. ¶¶ 3–4, 7.) The Court may consider the matters in those declarations. *See Patterson v. F.B.I.,* 893 F.2d 595, 603–04 (3d Cir. 1990) (affirming the district court's decision where the district court considered affidavits and other documents entered into the record by the defendants on a Rule 12(b)(2) jurisdictional challenge).

Pennsylvania is inadequate . . . [as] jurisdiction must be based on the *defendant's* conduct."[6] (ECF No. 95, at 19 (emphasis in original) (citing *Walde*n, 571 U.S. at 291).)

In opposition, LCV argues that it has sufficiently shown that this "Court has jurisdiction over the present matter under both diversity jurisdiction and statutory jurisdiction under RICO" pursuant to the *Calder* "effects" test as applied by the Third Circuit in *IMO Industries*.[7] (ECF No. 103, at 5.) First, in response to the Gavio Defendants' Motion, Plaintiff reiterates the same contacts it alleges in its FAC: that the Gavio Defendants "solicited investment from LCV, a U.S. corporation located in Pennsylvania," and entered into "multiple documents and agreements with LCV," some of which were on "LCV letterhead, with the words Pittsburgh . . . clearly printed above LCV's signature." (*Id*.) LCV also points to the phone calls and email correspondence regarding investment in the Target Companies and later settlement negotiations as a meaningful contact aimed at the forum. (*Id*. (citing *Grand Entm't Grp. Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 482 (3d Cir. 1993).) Considering these alleged contacts in the aggregate, LCV argues that the Gavio Defendants meaningfully reached into Pennsylvania and subjected themselves to jurisdiction here based on these contacts. (*Id*. at 4.) LCV also asserts that under the Third Circuit's application of the *Calder* "effects" test, jurisdiction over the Gavio Defendants exists because

---

[6] The Gavio Defendants also offer into the record declarations and exhibits. (ECF Nos. 95-1–95-14.) To support its argument that there are insufficient contacts tying either Nuova Argo or CIE to Pennsylvania, the Gavio Defendants offer Mr. Stefano Viviano's Declaration, in his capacity as the Director and the former Head of Finance for Argo Finanziaria S.p.A. and Director for CIE. (Viviano Dec. ¶¶ 3, 5, 6, 8, 11, 18, 19.) They also offer Mr. Alberto Rubegni's Declaration, in his capacity as Chief Executive Officer of Argo Financziaria S.p.A. and of Nuova Argo Finanziaria S.p.A (Rubegni Dec. ¶ 4) and Mr. Daniel Mach's Declaration, in his capacity as one of the Gavio Defendants' attorneys (*see generally* Mach Dec.).

[7] The Court will examine LCV's assertion of statutory jurisdiction via RICO in the next subsection. In this subsection, the Court only addresses the parties' dispute about the minimum contacts and the traditional specific jurisdiction tests.

"LCV felt the brunt of the harm in this forum," and because the Gavio Defendants "aimed their tortious conduct at LCV in this forum." (*Id.* at 8–9.)

In opposition to Deloitte Italy's Motion, LCV argues (1) that "the RICO statute empowers the Court to exercise extraterritorial jurisdiction with respect to non-U.S. defendants, enterprises, and conduct alleged in violation of §1962(c) and the conspiracy to violate it under 1962(d)" and (2) that the Court "has personal jurisdiction over Deloitte pursuant to RICO Section 1965(b)[.]" (ECF No. 104 (citing *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116-118 (3d Cir. 2020)).)

### 3.  <u>Minimum Contacts Analysis: LCV's Intentional Tort Claims (Counts III and IV)</u>

To determine whether a defendant has sufficient minimum contacts with the forum state in the context of alleged intentional torts, courts implement what is known as the *Calder* "effects" test. In *IMO Industries, Inc. v. Kiekert AG*, the Third Circuit addressed the *Calder* "effects" test as follows:

> This alternative test permits satisfaction of the minimum contacts prong of the personal jurisdiction inquiry if three elements are met: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). In *IMO Industries*, the Third Circuit noted that the *Calder* "effects" test should be narrowly applied, aligning with the viewpoints of its sister Circuits, whose cases "cast doubt on the assertion that a company will feel the 'brunt' of a tort injury at its principal place of business when that injury is based on damage to contracts or property not centered in the forum." *Id*. at 263 (summarizing decisions in the Fourth, Fifth, and Tenth Circuits). The Third Circuit's interpretation of the *Calder* "effects" test states: "The defendant must 'manifest behavior intentionally targeted at and focused on' the forum for

*Calder* to be satisfied." *IMO Indus., Inc.*, 155 F.3d at 265 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).

The Supreme Court in *Walden* further refined the *Calder* "effects" test, concluding that "[t]he proper question [of the 'effects' test] is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum in a meaningful way*." *Walden*, 571 U.S. at 290 (emphasis added) (discussing *Calder*, 465 U.S. at 788–89). Thus, the Court must assess the applicability of the *Calder* "effects" test to this case in context, accounting for (1) the Third Circuit's narrow construction of the test in *IMO Industries* and (2) the Supreme Court's further refinement of the test's inquiry in *Walden*. Here, under the *Calder* "effects" test, as necessarily supplemented by *Walden* and *IMO Industries*, the Court concludes that the contacts or acts taken by the Gavio Defendants or Deloitte Italy were not expressly aimed at the forum.

First, similar to the facts in *IMO Industries*, in this case, no in-person meetings occurred in Pennsylvania, and while physical presence is unnecessary to allege sufficient minimum contacts, the lack of them does not help LCV's case. *Burger King*, 471 U.S. at 478; *IMO Indus., Inc.*, 155 F.3d at 267 (concluding that "[s]ince none of [the] meetings occurred in New Jersey (or even in the United States), they provide no help to [the plaintiff] in demonstrating that [the defendant] targeted the forum"). Second, the Third Circuit highlighted that "a few calls or letters into the forum may only be of marginal import if the dispute is focused outside the forum." *Id*. (discussing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995) and *Southmark Corp. v. Life Inv'rs Inc.*, 851 F.2d 763 (5th Cir. 1988)). Following the *IMO Industries* decision, our Court of Appeals has concluded time and again that in the context of both intentional tort claims and other types of claims, phone calls, emails, similar electronic communication, and letters, even if initiated by the defendant and directed to the plaintiff in the forum State, are not enough for a court to exercise specific personal

19

jurisdiction without a showing of purposeful availment. *Toys "R" Us, Inc., v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003) ("[T]elephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they do not show purposeful availment." (internal quotation marks omitted) (quoting *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729 (E.D. Pa. Apr. 12, 1999)); *Sathianathan v. Pacific Exch., Inc.,* 248 F. App'x 345, 347 (3d Cir. 2007) (nonprecedential opinion concluding that a "handful of telephone calls, e-mails, and letters apprising appellant, a New Jersey resident, of the status of the arbitration" were insufficient minimum contacts).

In *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, the Third Circuit reversed the New Jersey district court's decision to exercise personal jurisdiction over a Taiwanese company based on contacts it had through a vessel-fabrication and delivery contract with a New Jersey company (and other United States companies). 229 F.3d 254, 257 (3d Cir. 2000). The court concluded that "[b]esides the contracts and implementing correspondence, there [were] no significant contacts . . . with the United States," holding that the "fact that [the contracts between the Taiwanese company and the New Jersey company, or other similarly situated United States companies,] were for a one-time purchase of equipment that was to be shipped to Taiwan and were solicited and negotiated through the Taiwanese agents of the U.S. vendors . . .negate[d] any inference of purposeful availment." *Id.* at 261. (internal quotation marks omitted).

Here, the Court similarly cannot discern any purposeful availment of the laws and privileges of Pennsylvania by Defendants based on the alleged phone calls, email correspondence, and other alleged communications that the parties shared about the ultimate "one-time purchase" of the Italian Target Companies and later settlement. The Court also notes that the initial solicitation and negotiation of the purchase agreement was led primarily by Mr. Calvetti—an individual who can fairly be described as LCV's Italian-based agent. Moreover, the initial

solicitation of LCV regarding the Target Companies, the emails and occasional phone calls exchanged in ramping up the transaction, and a single in-person meeting held in Italy, led to the "one-time" purchase agreement that is governed by Italian law, in which one of LCV's holding companies—a company organized under the laws of a state other than Pennsylvania (specifically, Delaware)—bought the Target Companies, which are Italian-based entities.[8]

As for the communications that took place around LCV's continued investment in the Target Companies, the later attempted settlement, the email circulation of the "Main Terms and Conditions" agreement and a "draft Settlement Agreement," and the settlement meeting in New York, these alleged contacts do not center this dispute in Pennsylvania. That LCV was located in Pittsburgh is, from the Court's perspective, no more than fortuitous and does not develop grounds to conclude that Defendants aimed their alleged tortious conduct at Pennsylvania. *IMO Indus., Inc.*, 155 F.3d at 262 (quoting *Far West*, 46 F.3d at 1080). In its briefing, LCV points to other documents that bore LCV's letterhead and referenced its location in Pittsburgh as an example of Defendants meaningfully connecting with Pennsylvania. While that does suggest that Defendants would have known that LCV was located in Pittsburgh, this allegation does not show that Defendants purposefully aimed their conduct at the forum or purposefully availed itself of the benefits of Pennsylvania—"[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." *IMO Indus., Inc.*, 155 F.3d at 265.

---

[8] LCV cites *Grand Entertainment Group Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 482 (3d Cir. 1993) for the proposition that "contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum" and that "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction[.]" The Court notes that this holding was before the Third Circuit's significantly more nuanced interpretation of the *Calder* "effects" test in *IMO Industries* and then by the Supreme Court in *Walden*. The Court is unpersuaded by the argument that email correspondence and occasional phone calls are enough to support jurisdiction here where the dispute does not center on or in Pennsylvania, and the record does not support a conclusion that Defendants purposefully availed themselves of this forum.

Finally, LCV attributes to Deloitte Italy an allegedly fraudulent letter on Energrid letterhead sent to KeyBank in Pittsburgh purportedly by Mr. de Visconti of LCV. The Court must determine whether this alleged letter is enough to create sufficient minimum contacts with Pennsylvania. Just as the Third Circuit's holdings in *IMO Industries* and decisions afterward make "clear that a few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum," the information sought by this allegedly forged letter was financial information of EH, LCV's Delaware holding company, to assist in Deloitte Italy's financial audit of Energrid, one of the Target Companies. While the letter arrived at the doorstep of KeyBank in Pittsburgh, this contact "cannot be sufficient to overcome the clear implication from the surrounding facts that [Pennsylvania] was not the focus of the dispute." *IMO Indus., Inc.*, 155 F.3d at 268 (referencing *Far West*, 46 F.3d at 1080 and *Southmark*, 851 F.2d at 772–73). Nor can this alleged contact demonstrate that Deloitte Italy purposefully availed itself of and benefited from the laws and/or privileges of Pennsylvania, as this allegedly forged letter's focus was on entities outside Pennsylvania, and specifically centered on the financial audit of one of the Italian Target Companies. *BP Chems. Ltd.*, 229 F.3d at 261 (holding that the existence of one-time purchase contracts with United States companies and correspondence surrounding those contracts did not show that the foreign defendant purposefully availed itself of the forum, especially where the transaction itself had predominant roots in Taiwan).

That LCV either received or sent correspondence by email and phone from its corporate domicile in Pittsburgh; that LCV's principal place of business was in Pittsburgh when Mr. Calvetti first informed LCV of the Target Companies opportunity; that KeyBank received correspondence; or even considering the assertion that the draft settlement agreement would have allegedly been governed by Pennsylvania law "does not overcome the clear implication from the surrounding

facts that [Pennsylvania] was not the focus of the dispute." *IMO Indus., Inc.*, 155 F.3d at 268. Rather, even taking the allegations as presented by LCV's FAC as true and drawing all reasonable inferences from them, the Court observes that (1) Defendants are Italian companies; (2) the transaction, continued investment, and attempted settlement centered on LCV's investment in Italian companies; and (3) that the solicitation, investment, financial audit, and later settlement negotiations about the Target Companies transaction was and remains grounded mainly in Italy with perhaps some attenuated ties to New York based on the single negotiation meeting that took place there.

Tying in the principles set forth in *Walden*, the minimum contacts as alleged in the FAC are insufficient for this Court to exercise specific personal jurisdiction because the alleged contacts center on Plaintiff's relationship with the forum state, rather than Defendants' relationship with the forum. *See Walden*, 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478) ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for [the court's] jurisdiction[.]"). In essence, LCV argues that because it is located in Pittsburgh (and KeyBank, as a third party, is also in Pittsburgh) and holds a Pittsburgh-based email address and phone number, the substantive correspondence by email or phone highlights that Defendants meaningfully aimed tortious behavior at Pittsburgh. But the record shows that Pennsylvania appears to have played no more than a "fortuitous role in the parties' past dealing . . . [and] their continuing relationship . . . [with no evidence] that [D]efendants' alleged torts had any connection to [Pennsylvania] beyond [LCV's corporate domicile]." *IMO Indus., Inc.*, 155 F.3d at 262 (quoting *Far West*, 46 F.3d at 1080). And Third Circuit case law reflects that without a showing that a defendant purposefully availed itself of the benefits of the forum state, phone calls and other correspondence directed at a plaintiff located in the forum are not enough to create sufficient minimum contacts. *Toys "R" Us, Inc.*, 318 F.3d at 455 ("[T]elephone communication or mail sent

by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.'"(internal quotation marks omitted) (quoting *Barrett*, 44 F. Supp. 2d at 729); *BP Chems. Ltd.*, 229 F.3d at 261 (holding that the "fact that [the contracts at issue between a Taiwanese and New Jersey company] were for a one-time purchase of equipment that was to be shipped to Taiwan and were solicited and negotiated through the Taiwanese agents of the U.S. vendors seem[ed] . . . to negate any inference of 'purposeful availment'"); *Sathianathan,* 248 F. App'x at 347 (concluding that a "handful of telephone calls, e-mails, and letters apprising appellant, a New Jersey resident, of the status of the arbitration" were insufficient minimum contacts).

Ultimately, while the alleged interactions by phone and email connects Defendants to LCV, as noted above, LCV's jurisdictional allegations fail to connect Defendants "*to the forum* in a meaningful way," and the alleged contacts do not suggest that either Defendant expressly aimed their conduct at Pennsylvania. *Walden*, 571 U.S. at 290 (emphasis added); *IMO Indus., Inc.*, 155 F.3d at 265 ("Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement . . . The defendant must 'manifest behavior intentionally targeted at and focused on' the forum for *Calder* to be satisfied." (quoting *ESAB Grp., Inc.*, 126 F.3d at 625)).

### 4. <u>Minimum Contacts Analysis: LCV's Remaining Non-Rico Claims (Counts V, VI, VII, and VIII)</u>

As for LCV's claims of breach of contract, breach of the duty to negotiate in good faith, misrepresentation, and unjust enrichment against all or some Defendants, the Court concludes that under the applicable standards as explained in *Walden*, the contacts that LCV alleges substantially connect Defendants to the forum are insufficient to create specific personal jurisdiction. The Court reemphasizes the focus of *Walden*'s minimum contacts inquiry:

> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State . . . [and] we consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. . . . Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there . . . [and while] . . . physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact. . . . [T]he plaintiff cannot be the only link between the defendant and the forum.

*Walden*, 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478; *Int'l Shoe Co.,* 326 U.S. at 319). For the reasons that led the Court to conclude that LCV's alleged contacts were insufficient to satisfy the minimum contacts test in the intentional torts context, the Court also concludes that LCV's alleged contacts in the context of its other non-RICO claims fail to satisfy the personal jurisdiction standard under *Walden*. As discussed above, the jurisdictional allegations of the FAC are simply insufficient to fulfill the *Walden* test, and accordingly, the Court does not have specific jurisdiction over Defendants to reach the merits of Counts V, VI, VII, and VIII.

### 5.  Minimum Contacts and LCV's RICO Claims (Counts I and II)

Together with LCV's FAC, Plaintiff submits a RICO Case Statement in accord with Local Rule 7.1B further asserting violations of 18 U.S.C. § 1962(c) against the Gavio Defendants and violations of § 1962(d) against all Defendants. As alleged in its Case Statement and FAC, LCV contends that Defendants (1) engaged in racketeering activity as an enterprise and (2) conspired to fraudulently induce Plaintiff's investment in the Target Companies in violation of the RICO statute. (ECF Nos. 80 and 82.) LCV asserts that the Gavio Defendants violated § 1962(c) by "directly and indirectly conduct[ing] and participat[ing] in the conduct of the enterprise's affairs through the pattern of racketeering and activity [namely fraudulent investment schemes and mail fraud allegations, among other alleged illegal activity.]" (ECF No. 80, at 33–34.) Under § 1962(d),

LCV alleges that "[e]ach Defendant intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprises[.]" (*Id.* at 36–39.)

Deloitte Italy moves to dismiss these claims on the grounds that "LCV cannot satisfy the requirements of Pennsylvania's long-arm statute" and as such, RICO does not independently confer personal jurisdiction over Deloitte Italy without it having sufficient minimum contacts with the forum state. (ECF No. 93, at 9–10.) While the Gavio Defendants' briefing of the issue did not raise the same argument about the interplay of traditional personal jurisdiction and RICO's limited conference of personal jurisdiction by statute, it did address whether this Court has personal jurisdiction over any of the named Defendants in the first place, which necessarily implicates whether this Court can exercise jurisdiction over Defendants based on LCV's civil RICO claims. (ECF No. 95.)

In opposition to Defendants' Motions to Dismiss, LCV argues that "the RICO statute empowers the Court to exercise extraterritorial jurisdiction with respect to non-U.S. defendants, enterprises, and conduct alleged in violation of §1962(c) and the conspiracy to violate it under 1962(d), because LCV has adequately alleged that it has suffered domestic injury to its business and property." (ECF No. 104, at 5 (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2103–106 (2016) and *Kyko Glob., Inc. v. Prithvi Info. Sols. Ltd.*, No. 18-01290, 2020 WL 1159439, at *35 (W.D. Pa. Mar. 10, 2020)).) LCV relies on the Third Circuit's Opinion in *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3d Cir. 2020) for the proposition that the "if the court can assert jurisdiction over at least one RICO defendant[, here, the Gavio Defendants,] under a traditional personal jurisdiction analysis," it can assert jurisdiction over Defendant Deloitte Italy under § 1965(b) of the RICO statute. (ECF No.104 (citing *Laurel Gardens*, 948 F.3d at 120).) Thus, LCV

argues that because the Gavio Defendants satisfy the requirements of specific jurisdiction, the RICO statute permits Plaintiff to name Deloitte Italy as a defendant here pursuant to § 1965(b).[9]

Although LCV argues that "the RICO statute empowers the Court to exercise extraterritorial jurisdiction with respect to non-U.S. defendants," the Court concludes that RICO does not supplant the Court's duty to examine the constitutional limits of personal jurisdiction over Defendants.[10] *RJR Nabisco, Inc.*, 136 S. Ct. at 2115 (Ginsburg, J., concurring) ("[Due Process constraints] provide a check against civil RICO litigation with little or no connection to the United States[.]"). Notably, the Third Circuit has held that "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Laurel Gardens, LLC*, 948 F.3d at 117–18. Thus, while in the absence of traditional personal jurisdiction over any of the Defendants, RICO does not operate to confer personal jurisdiction, LCV imprecisely contends that the Supreme Court in *RJR* concluded that RICO confers personal jurisdiction by and through some form of independent extraterritorial reach. *Id.*

---

[9] As summarized by the court in *Kyko*, the Third Circuit in *Laurel Gardens* joined the majority of Circuits that have held that § 1965(b) is the RICO provision that "governs personal jurisdiction in RICO claims" for conferring personal jurisdiction "through the RICO statute itself." *Kyko Global, Inc.*, 2020 WL 1159439, at *35. Section 1965(b) provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

[10] The Court also notes that while the Supreme Court's decision in *RJR* addresses the extraterritorial reach of RICO, that decision did not expressly address personal jurisdiction. *RJR Nabisco, Inc.*, 136 S. Ct. at 2090. The extraterritorial reach of a statute like RICO, which includes a nationwide service of process provision, and a court's ability to exercise constitutionally permitted personal jurisdiction over defendants alleged to have violated RICO are not synonymous legal analyses. *See Laurel Gardens, LLC*, 948 F.3d at 117–18 (discussing *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006) (adding the caveat that when a "civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice" as stated in § 1965(b)).

In these regards, the Court must first determine whether it can exercise traditional personal jurisdiction over at least one named Defendant before determining whether RICO § 1965(b) arguably confers jurisdiction over remaining Defendants. *Id.* Because the Court determines that it does not have specific personal jurisdiction over any Defendant in this case as outlined above, it cannot independently exercise personal jurisdiction by relying on RICO. LCV's additional reliance on *Kyko* to support its argument that this Court may exercise personal jurisdiction over Defendants through RICO's extraterritorial reach or its conference of personal jurisdiction under § 1965(b) is likewise to no avail. Instead, the court's reasoning in *Kyko* applied the Third Circuit's jurisdictional requirement, as stated in *Laurel Gardens*, that "at least one RICO defendant have minimum contacts with the forum" for § 1965(b) to operate as conferring personal jurisdiction over remaining defendants. *Kyko Glob., Inc.*, 2020 WL 1159439, at *35. Thus, LCV's reliance on § 1965(b) as a mechanism to confer jurisdiction over Deloitte Italy will not resolve the jurisdictional deficiencies here. Rather, it is an unsuccessful attempt by LCV to create jurisdiction over one or more of the Defendants where there is no basis for this Court to exercise traditional personal jurisdiction over the Gavio Defendants or Deloitte Italy in the first place. *See Laurel Gardens*, 948 F.3d at 120 ("[A] civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant," which is not the case here).

Moreover, as the Court explains below, further amendment of Plaintiff's civil RICO claims would be futile because without the existence of personal jurisdiction over at least one Defendant, the Court continues to be without power to adjudicate any of LCV's RICO claims against these Defendants. *Id*. (explaining that § 1965(b) of the RICO statute only extends a court's personal jurisdiction to "other parties"—who the court otherwise would not have jurisdiction over—but only if the court has personal jurisdiction over at least one defendant).

### C. LCV's SAC Does Not Cure the FAC's Deficiency and Could Not Survive Renewed Motion to Dismiss for Want of Jurisdiction

As explained above, the FAC does not support the exercise of personal jurisdiction over any Defendant, so the Court must next analyze whether the additional, new allegations made in LCV's proposed SAC cures its "original pleading's" deficiency and whether the SAC's assertion of alleged contacts could survive a renewed motion to dismiss for want of personal jurisdiction. The Court concludes that the SAC, and all other filings it may appropriately consider in determining whether it has personal jurisdiction in this case (namely the declarations and exhibits offered by both LCV and Defendants), do not establish that this Court has specific jurisdiction over Defendants. For reasons much like those applicable to the consideration of the FAC, the Court concludes that LCV's SAC fails to meet its burden to show that Defendants have sufficient minimum contacts with the forum. On top of the several new allegations proffered in the SAC, all the contacts that the Court summarizes as alleged in LCV's FAC are carried over to LCV's proposed SAC. As a result, the Court summarizes below only the additional alleged contacts proposed in the SAC.

#### 1. Defendants' Additional Contacts with the Forum as Alleged in the SAC

Plaintiff's proposed SAC asserts that the Court can exercise specific jurisdiction over both the Gavio Defendants and Deloitte Italy because they "reached into Pennsylvania for the purpose of making false, fraudulent, and misleading statements to" LCV, a company based in Pittsburgh, "with the intent and effect of harming LCV's interest in Pittsburgh." (ECF No. 121-1, at 5.) In general, the SAC's additional jurisdictional allegations are simply more detailed recitations of the assertion that "Defendants were clearly aware that they were negotiating with and actively soliciting investment from the Plaintiff in Pittsburgh." (*Id.* at 24.) The Court summarizes the SAC's

other jurisdiction allegations attributable to both the Gavio Defendants and Deloitte Italy as follows: (1) more detail as to LCV's corporate domicile being in Pittsburgh as well as the fact that it is "invested in by . . . Pennsylvania residents"; that (2) "[a]lmost all of LCV's employees were residents of Pennsylvania and located in Pittsburgh"; that (3) "LCV maintains not only its business records and operations in Pittsburgh . . . but also bank accounts . . . held primarily at accounts in Pittsburgh, including KeyBank"; and finally, (4) that when LCV confronted Mr. Calvetti about the allegedly false financial documents, the "interaction occurred via phone, with Mr. de Visconti and Mr. Bonidy located in Pittsburgh." (*Id*. at 8–9, 38.)

As to the Gavio Defendants, LCV points to the following additional contacts as supposedly substantially connecting them to Pennsylvania: (1) Defendant Nuova Argo "publicly promotes its status as a 'global player in the major infrastructure sector'" and (2) added detail about the alleged phone call from "Mr. Alberto Rubegni, the CEO of Argo, to Mr. de Visconti . . . [occurring on or around September 29, 2016] tout[ing] the strong financial performance" of one of the Target Companies. (*Id*. at 11, 22.)

As for Deloitte Italy, the additional alleged contacts include: (1) the fact that Deloitte markets itself as a "cohesive global brand" as well as its "standing as a major global accounting and auditing firm"; (2) a series of email correspondence between June and September 2017 with the following entities: Deloitte Italy, board members of the Target Companies, sometimes KeyBank in Pittsburgh, and LCV; (3) an alleged phone call from a Deloitte Italy partner to LCV; and (4) two alleged phone calls from Deloitte Italy to KeyBank in Pittsburgh "requesting information . . . claimed [to be] necessary to complete the 2016 Audit of Energrid S.p.A[.]" (*Id*. at 11, 17, 18, 40–49.)

### 2.   **The Parties' Arguments: Motion to Amend**

In its Motion for Leave to Amend, LCV argues that under Federal Rule of Civil Procedure 15(a), it has a right to amend its Complaint (now for a second time), contending that the new allegations in its SAC will cure its FAC's jurisdictional deficiencies and could withstand a renewed motion to dismiss for want of personal jurisdiction. (ECF No. 121.) It also argues that amendment would not unduly prejudice Defendants. (*Id.*; ECF Nos. 128 and 129.) Both the Gavio Defendants and Deloitte Italy oppose Plaintiff's request to amend. Defendants argue that even if the proffered SAC were permitted, it still would not clear the jurisdictional hurdle as to either Defendant, making further amendment a futile endeavor. (ECF Nos. 124, 125, and 126.) LCV counters Defendants' arguments by arguing that its SAC presents sufficient jurisdictional allegations to satisfy both the traditional personal jurisdiction test and the *Calder* "effects" test and repeating many of its same arguments from the motion to dismiss briefing. For the reasons below, Defendants' arguments carry the day on these issues.

### 3.   **The Additional Contacts as Alleged in the SAC Do Not Cure the FAC's Jurisdictional Deficiencies and the SAC Could Not Survive a Renewed Motion to Dismiss**

To assess whether the Gavio Defendants or Deloitte Italy have sufficient minimum contacts based on the SAC's additional jurisdictional allegations, the Court again places its emphasis on whether Defendants' alleged conduct connects them to Pennsylvania in a meaningful way, both in the context of LCV's alleged intentional tort claims and LCV's remaining non-RICO claims. *Walden*, 571 U.S. at 284–86 (citing *Burger King*, 471 U.S. at 478; *Int'l Shoe Co.,* 326 U.S. at 319) (rejecting "attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State" and highlighting that "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself").

The same reasoning that the Court used earlier in this Opinion regarding LCV's FAC applies to the Court's assessment of LCV's proposed SAC. Here, the pleadings and all other filings the Court may appropriately consider in assessing its personal jurisdiction over Defendants, and specifically the new matters advanced by LCV, fail to show either that the Gavio Defendants' or Deloitte Italy's conduct connects them to Pennsylvania "in a meaningful way," or that Defendants specifically aimed their alleged conduct at Pennsylvania. *Id.*

The Court first addresses LCV's assertion that Deloitte Italy and Nuova Argo's status as "global players" in their respective fields constitutes a sufficient jurisdictional contact with Pennsylvania. This assertion does not support a conclusion that either Defendant has contacts with the forum state as required for specific jurisdiction. *Id.* Some plaintiffs in other cases have argued that global advertising might create grounds for general jurisdiction, but even where general jurisdiction is on the table, at least one lower court in our Circuit has rejected exercising jurisdiction on those grounds. *See H.A.S., Inc. v. Senju Metal Indus. Co*, No. 03-01215, 2003 WL 23419852, at *4 (E.D. Pa. Dec. 12, 2003) (That the defendant asserts on its "website that it maintains a global network is clearly not sufficient to establish that [the defendant] maintains continuous and substantial contacts with this jurisdiction sufficient for a finding of general jurisdiction."). And while in any event, general personal jurisdiction is not asserted here, these allegations about Defendants having a "global reach" do not demonstrate the specific "purposeful availment" necessary to support specific personal jurisdiction. Next, the reiteration of LCV's ties to Pittsburgh, by asserting that its investors are from Pittsburgh or that most of its employees live in the Pittsburgh area, do not show minimum contacts sufficient for the Court to exercise specific jurisdiction (1) under the *Calder* "effects" test as supplemented by *IMO Industries* and *Walden* regarding LCV's alleged intentional tort claims, or (2) under *Walden* by itself as to LCV's remaining claims. *See Walden*, 571 U.S. at 284–86; *IMO*

*Indus., Inc.*, 155 F.3d at 265 ("Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself[.]").

Although LCV references the contacts alleged based on communications by email either sent from or received by LCV in Pittsburgh, and on a few occasions, KeyBank, these emails along with the alleged phone calls fail to meaningfully connect Defendants to Pennsylvania under *Walden*, *Calder*, or *IMO Industries*. Taking together the Supreme Court's holding in *Walden* and the Third Circuit's application and interpretation of the *Calder* "effects" test in *IMO Industries*, the Court concludes that LCV has not met its burden, including in the context of its intentional tort claims, of proving that "the cause of action arose from [Defendants'] forum-related activities[.]" *Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted); *see Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff [or a third party] . . . is an insufficient basis for jurisdiction[.]"). The Court so concludes because Defendants' alleged contacts, as asserted by LCV and as summarized above, demonstrate no more than a "finding that harm caused by [Defendants' alleged] intentional tort[s] [were] primarily felt within the forum," nor do they show purposeful availment as required by the Third Circuit. *See IMO Indus., Inc.*, 155 F.3d at 268; *Toys "R" Us, Inc.*, 318 F.3d at 455 ("[T]elephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.'" (internal quotation marks omitted) (quoting *Barrett*, 44 F. Supp. 2d at 729)); *BP Chems. Ltd.*, 229 F.3d at 261 (holding that the "fact that [the contracts at issue between a Taiwanese and New Jersey company] were for a one-time purchase of equipment that was to be shipped to Taiwan and were solicited and negotiated through the Taiwanese agents of the U.S. vendors . . . negate[d] any inference of 'purposeful availment"); *Sathianathan,* 248 F. App'x at 347 (concluding that a "handful of telephone calls, e-mails, and letters apprising appellant, a New Jersey resident, of the status of the

arbitration" were insufficient minimum contacts). The alleged contacts as to the Gavio Defendants or Deloitte Italy reveal only a connection "between the plaintiff (or third parties) and the forum State," both of which are insufficient to create minimum contacts in the context of LCV's remaining non-intentional tort claims. *See Walden*, 571 U.S. at 284–86.

Finally, LCV's other allegations of Deloitte Italy's engagement with KeyBank by email and phone calls likewise will not carry the day. These alleged contacts with the forum center on a derivative relationship with a third party (KeyBank), which likewise cannot be the basis for exercising specific jurisdiction under *IMO Industries*, *Walden*, and other Third Circuit decisions since *IMO Industries* that have held phone calls, emails, or other correspondence are not enough without a showing of purposeful availment, especially as the Court previously explained that this dispute centers outside the forum. *Walden*, 571 U.S. at 286 ("[The] defendant's relationship with . . . [a third party] . . . is an insufficient basis for jurisdiction[.]"); *IMO Indus., Inc.*, 155 F.3d at 268.

The record does not reflect that either Defendant targeted Pennsylvania when it transacted, communicated, and later negotiated with LCV. *Id.* Rather, the record shows that LCV's claims arise from an Italian-centered deal for LCV's purchase and investment in Italian companies through a contract governed by Italian law. Supreme Court precedent guides that whether a plaintiff resides in the forum and has contacts with the forum, or whether a third party has contacts with the forum, is not the proper point of emphasis to conclude that minimum contacts exist. *Walden*, 571 U.S. at 285 ("[While] . . . physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact . . . . [T]he plaintiff cannot be the only link between the defendant and the forum.").

Considering the allegations as presented by Plaintiff's proposed SAC, the Court concludes that the dispute here is centered outside the forum state: (1) Defendants are Italian companies; (2)

the solicitation, investment, financial audit, later settlement negotiations, and communications surrounding these events regarding the Target Companies transaction remain circumstances with predominant roots in Italy and at most attenuated ties to another state (New York); and finally, (3) no reformation of the jurisdictional allegations by the proposed SAC would establish that this Court has specific personal jurisdiction over Defendants. The Court does not and cannot conclude that the solicitation of and continued correspondence with LCV surrounding the transaction as well as later settlement negotiations between the parties by email and phone, or even Deloitte Italy's alleged interactions with a third party—KeyBank—present sufficient minimum contacts with the forum state such that any of the Defendants are connected with the forum in the necessarily meaningful way. *See Walden*, 571 U.S. at 285–86; *see also IMO Indus., Inc.*, 155 F.3d at 268. Thus, sufficient minimum contacts are not present here as to any of the Defendants, and the proposed amendment would not resolve that deficiency.

Lastly, because the Court concludes that there are no grounds on which it may exercise specific personal jurisdiction over Defendants, it follows that the Court is unable to constitutionally exercise jurisdiction over at least one Defendant, and RICO cannot serve as a mechanism to confer personal jurisdiction through § 1965(b) or by and through itself. *See Laurel Gardens*, 948 F.3d at 120 ("[A] civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant[.]").

## IV.   <u>CONCLUSION</u>

For all the reasons set out in this Opinion, the Court **DENIES** LCV's Motion to Amend Complaint (ECF No. 121) because LCV's proposed SAC fails to cure the original jurisdictional deficiency of its FAC, and the SAC's additional jurisdictional allegations could not overcome a renewed motion to dismiss for lack of personal jurisdiction. As a result, the Court hereby

**GRANTS** both Motions to Dismiss (ECF Nos. 92 and 94) and **DISMISSES WITHOUT PREJUDICE** LCV's FAC (ECF No. 80) for want of specific personal jurisdiction, concluding that further amendment would futile.

 /s Mark R. Hornak_____
Mark R. Hornak
Chief United States District Judge

Dated: February 24, 2021

cc:     All counsel of record